UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mr. Charles Blake, 11-A-3257

12 CV 7245

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Raymond Kelly, N.Y.C. Police Commissioner

**COMPLAINT**
under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial: ☒ Yes   ☐ No
(check one)

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names. The names listed in the above
caption must be identical to those contained in Part I. Addresses should
not be included here.)*

RECEIVED
Sep 2, 2012
PRO SE OFFICE

## I.    Parties in this complaint:

A.    List your name, identification number, and the name and address of your current place of
      confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as
      necessary.

Plaintiff      Name   Mr. Charles Blake
               ID #   11-A-3257
               Current Institution   FRANKLIN CORRECTIONAL FACILITY
               Address   62 Bare Hill Rd., P.O. Box 10
                         Malone, New York   12953

B.    List all defendants' names, positions, places of employment, and the address  where each defendant
      may be served. Make sure that the defendant(s) listed below are identical to those contained in the
      above caption. Attach additional sheets of paper as necessary.

Raymond Kelly, NYC Police Commissioner
New York City Police Department
1 Police Plaza
New York, New York 10038

Defendant No. 1    Name <u>Raymond W. Kelly, NYC Police Commissioner</u> Shield # <u>  ?  </u>

Where Currently Employed <u>New York City Police Dept.</u>

Address <u>1 Police Plaza,</u>

<u>New York, New York   10038</u>

Defendant No. 2    Name _____ Shield # _____

Where Currently Employed _____

Address _____

_____

Defendant No. 3    Name _____ Shield # _____

Where Currently Employed _____

Address _____

_____

Defendant No. 4    Name _____ Shield # _____

Where Currently Employed _____

Address _____

_____

Defendant No. 5    Name _____ Shield # _____

Where Currently Employed _____

Address _____

_____

## II.    Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur? <u>Kings County Branch, New</u> <u>York Criminal Court Bldg. 120 Schermerhorn St. Brooklyn, New York</u>

B.    Where in the institution did the events giving rise to your claim(s) occur? <u>Arraignment Court,</u> <u>Holding Cell @ Arraignment, Floor(?)</u>

C.    What date and approximate time did the events giving rise to your claim(s) occur? <u>The Exact time</u> <u>of the injury is unknown, only occurring early in the morning on August 22nd, 2010</u>

D.     Facts: _____    _____    _____

| | |
|---|---|
| **What happened to you?** | Central Booking deputies, are responsible for the overcrowding conditions which led to an assult upon the plaintiff over seating, which also led to plaintiffs broken leg |
| **Who did what?** | Plaintiff Charles Blake was arrested on 8-19-2010 for various criminal offenses, Burglary 3rd., Criminal Mischief, Criminal Possession Weapon 4th., by the 77th Precint. Thereafter taken to Central Booking at 120 Schermerhorn Street, Processed into custody and thereafter on 8-26-2010 taken to arraignment and held ina court feeder cell that was overcrowded. I was held to be seen by an attorney and also arraignment. There were |
| **Was anyone else involved?** | no available seating, detainee's were sleeping on the floor. After a couple hours an officer appeared with breakfast, at which time I took a seat. I did not eat. The seating occupancy in the cell was for no more than 20-25 detainee's. but there was at least 40-- to 45 persons in the cell. Two minutes after sitting down. Two unknown persons told me |

to get out of their seat. Demanded me. I said NO! When I refused I was assaulted and knocked
unconcious. I called for help and while trying to get away from the assailants, I tripped

| | |
|---|---|
| **Who else saw what happened?** | and fell over individuals that were on the floor. my last memory was my leg caught under someone on the floor before I was further assualted and knocked out. When I awoke my foot was twisted completely around and clearly broken. |

*********************************************************************************

*********** PLEASE SEE ATTACHED PAGES*****************************************

*****************************************************************************

_____

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment,
if any, you required and received. Other than facial bruising, my foot was completely broken
with a fracture. The area of the injury is Fracture of the Talus and Tibia and Fibula,
and a tear of the Interosseous membrane that required open reduction and internal
fixation with a metal rod and screws,

_____

_____

_____

_____

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought
with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until such administrative remedies as are available are
exhausted."  Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

    Yes <u> X </u>    No <u>    </u>

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). <u>I was a pretrial detainee, held at the Court building booking</u> <u>portion of the building until I was taken to arraignment holding cells in the a.m.</u>

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

    Yes <u>    </u>    No <u> X </u>    Do Not Know <u>    </u>

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

    Yes <u>    </u>    No <u> X </u>    Do Not Know <u>    </u>

    If YES, which claim(s)? _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

    Yes <u>    </u>    No <u> X </u>

    If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

    Yes <u>    </u>    No <u> X </u>

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance? _____

    1.    Which claim(s) in this complaint did you grieve? <u>none</u>

    _____

    2.    What was the result, if any? <u>none</u>

    _____

    3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. <u>none</u>

    _____
    _____
    _____
    _____

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here: <u>After the hospital</u> <u>for two weeks, I was released and continued treatment while released.</u>

I recieved treatment at the Brooklyn Medical Center. I also recieved several Cast replacements, I was given a Walker, and I had to attend physical therapy treatment all at the same hospital.

2.  If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any: The only person that was aware of my intentions was my attorney, that was representing me on the criminal case. but she never filed a notice of intent with Criminal Court or the City of New York, I filed a notice of motion to file a late notice of intent against the City of New York on or about December 30th 2011, PENDING?

G.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. There are no other remedies available to Charles Blake with the exception the filing of this present 1983 in Federal Court.

**Note:**  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). I seek to have the procedures on my leg to be completed and the screws and metal plates removed. I would like more physical therapy As I am still baring with incredible pain and swelling of my foot. I also seek damages in the amount of $750,000.00 Dollars for past pain and suffering also $750,000.00 for future pain and suffering, plaintiff will require additional procedures, including grafting to cover the exposed tissue, my ankle has a permanent injury and I now walk with a limp and that limp will get progressively worse, plaintiff would require a revision of graft and work to his ankle.

**VI.    Previous lawsuits:**

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes <u>xxx</u>    No ____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff  <u>Charles Blake</u>

Defendants  <u>New York City Police Department</u>

2.    Court (if federal court, name the district; if state court, name the county) _____
<u>KINGS COUNTY, SUPREME COURT</u>

3.    Docket or Index number _____

4.    Name of Judge assigned to your case _____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes <u>XXX</u>  No ____
If NO, give the approximate date of disposition _____

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

_____

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes <u>XXXX</u>    No ____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____

_____

3.    Docket or Index number _____

4.    Name of Judge assigned to your case _____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes ____  No ____
If NO, give the approximate date of disposition _____

7.    What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)  That case is still pending at the KINGS COUNTY, SUPREME COURT, however due to the late notice request I am not optimistic that it will survive a request for dismissal due to timeliness issues.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 5th day of June , 20 12.

Signature of Plaintiff   Charles Blake,

Inmate Number   11-A-3257

Institution Address   FRANKLIN CORRECTIONAL FACILITY

62 Bare Hill Rd., P.O. Box 10

Malone, New York   12953

**Note:**   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this 5th day of June , 20 12 I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:

Mr. Charles Blake, 11-A-3257

CAROLYN ST DENIS
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN FRANKLIN COUNTY
NO. 01ST6043150
COMMISSION EXPIRES OCT. 10, 20 14

( AFFIDAVIT OF PETITIONER )

Commissioner of New York city Police Department, Raymond Kelly (herein after) Mr.Kelly, and Brooklyn Central Booking Officer, John Doe(herein after) John Doe, are responsible for the injuries reported by this action.

(1) Mr.Charles Blake, was placed in harms way when by their knowledge and actions and lack of actions, placed plaintiff into an overcrowded holding cell, while being held as a pretrial detainee at 120 Schermerhorn Street, Brooklyn, N.Y., at or around 7:30a.m. on August 26, 2010.

(2) Mr. Kelly and John Doe, violated the plaintiffs Due Process Constitutional Rights, and violated plaintiffs 8th and 14th Constitutional Rights to be free from cruel and unsual punishment.

(3) The above mentioned defendants Mr. Kelly, and John Doe are responsible for the continuing custom, and official policy of overcrowding the NYC Criminal Court Holding Pen's.

(4) The deliberate act of overcrowding the court arraignment holding pen in order to efficiently accommendate the arrignment process and bring detainee's before the court in violation of the plaintiff constitutional rights and protections, for the sole purpose of accommendating the arraignment process.

(5) The arraignment clerk whom is also chiefly responsible for the arraignment of pretrial detainee's and the order of arraignments along with the John Doe knew from previous experience that overcrowding the arraignment holding pens has in previous occassions led to violence, disruptions, and complaints.

(6) The arraignment clek and John Doe under the authority of Mr. Kelly knew from previous experience as reported to the New York State Commission of Corrections, that overcrowding complaints of the arrignment holding pens were enviroments of constitutional violations of the detainee's Rights under the Law.

(7) This custom and policy and deliberate act was the moving force behind the injuries had upon the petitioner, Charles Blake, when Mr. Blake was attacked and assulated at 120 Schermerhorn Street.

(8) N.Y.C. Police Commissioner, Raymond Kelly, as chief administrator over the entire N.Y.C. Police Department and Central Booking and custody of pretrial detainee's in Brooklyn, N.Y. Court holding Pen's for arraignment, was fully aware of the custom and deliberate likelihood of the overcrowding danger's with over - - crowding arraignment holding pen's given the documented history of violence had on many prior occasions at 120 Schermerhorn Street, Brooklyn, N.Y.,

(9) Despite the official legal limits placed on the size of the holding pen's and the capacity of each holding cell, John Doe of the Brooklyn Central Booking, placed the petitioner into a holding cell that had already exceeded it's allowable legal limits and seating capacity.

(10) Petitioner Charles Blake was nonetheless placed into the holding pen where--in pretrial detainee's were sleeping on the floor due to a lack of seats available.

(11) Due to these conditions petitioner was injured by two assailants in the holding pen, and there was no safe place to escape the violent assualt.

(12) Petitioner's foot got wedged by detainee's sleeping on the floor during the attack and was broken due to the overcrowding.

(13) Mr. Kelly, whom has responsibility over all police facilities in the city of New York and was thereby aware of the custom of court officials, John Doe, and Central Booking employee's responsible for maintaining custody and control over all detainee's appearing for arraignment.

(14) This awareness was in addition to the expressed violation of the City, County, and State Law concerning seating capacity. As well as the health code, and building codes, and federal regulations concerning the same.

(15) Police Commissioner Raymond Kelly, monitors and modify the delivery of Police Services within the City of Brooklyn, N.Y., and thereby did nothing to modify the custom of overcrowding for pretrial suspects at arraignment.

(16) Due to the failure to make accomodations for pretrial detainee's that are awaiting arraignment , Charles Blake leg was broken during assualt.

(17) Despite fact that NYC Police Dept is the recipient of Funding from the DEPARTMENT OF JUSTICE  to alleviate prison overcrowding under the Bureau of Justice Assistance Grant Program 28 CFR Sec. 33.31 (9) (10) respectively. Which provides alternatives to pretrial detention. Subpart A- Criminal Justice Block Grants,(76 FR 82069)

(18) The official capacity of Raymond Kelly as Commissioner of the NYC Police Department and all its functions, he was aware of the Due Process violations and problems with jail cell overcrowding during the arraignment process at the Brooklyn, N.Y. facility, located at 120 Schermerhorn  Street.

(19) Due to the failure of the Police to provide Mr. Charles Blake an enviroment of safety during the arraignment detention, Mr. Charles Blake was placed into harms way knowingly by Officer John Doe, at central Booking at 120 Schermerhorn St.

(20) Mr. Blake was assualted and injured when while in the Holding Pen at 120 Schermerhorn St. during breakfast feeding and/or soon thereafter he was attacked by two assailants. While trying to flee the assault mr. Charles Blakes foot became entangled with other detainee's sleeping on the floor and was broken.

(21) Mr. Blake was injured over a seat in a holding cell that exceeded it's seating capacity, whereby Mr. Blake was maliciously and viciously and brutally harmed as a result, requiring weeks of hospitalization.(Exhibit A)

(22) The injury and assault occurred on August 26, 2010 at 7:30 a.m.  causing the plaintiff to suffer great physical pain and mental anquish and humiliation.

(23) Defendants Ray Kelly, and Officer John Doe, and their officers, agents, assistants and employees individually and collectively were grossly negligent in:

    (a) allowing plaintiff to be placed and detainrd in the overcrowded arraignment pen in the same pen with other detainee's without adequate seating.

    (b) allowing inmates, who defendants knew or should have known were particularly susceptible to harm, hurt and danger in overcrowded conditions, in an area based upon prior knowledge and experience,

cont.- and prior injuries, fights, assualts, and hospitalization, that

such conditions were a violations of detainee's Due Process rights

and in violation of the Costitutional Protections against cruel

and unusual punishment.,Raymond Kelly failed the excercise of

ordinary care and should have known that the practice of the

overcrowding made it highly foreseeable that some pretrial

detainee's would be attacked, injured, harmed and abused in the

overcrowed holding pen, as was Charles Blake.

(24)  There was an inadequate number of officers provided to prevent such

attacks and abuse upon Charles Blake.

(25) Ray Kelly, the Department of Corrections, John Doe at Central Booking,

thier officers, agents, assistants and employees were grossly negligent in failing

to protect the plaintiff Charles Blake in the overcrowed conditions on August 26,2010

when they individually and collectively knew, or in the excercise of ordinary due care

should have known, based on prior experience that overcrowding and a lack of seats

available at NYC Criminal Court Holding Pen, at 120 Schermerhorn Street would

lead to a violation of Mr. Charles Blake Due Process Protections.

(26) The Defendants, each of them, subjected plaintiff to cruel and unusual

punishment in violation of the eight and fourteenth amendments, and petitioner's

due process under the fifth amendment, particularly in the face of New York State,

Corrections Law §500-b. Housing of Prisoners and other persons in custody, sub -

-section 7(a) (2), and Sub-section 8 noncompliance with Commission rules and

regulations with regard to (b) maximum jail capacity and security requirements. SEE EXB (3)

WHEREFORE, plaintiff respectfully prays this court to:

a) permanently enjoin the defendants, their agents, assistants, successors, employees

and person acting in concert or cooperation with them from further violating the

rights, privileges and immunities guaranteed to the plaintiff under the Constitution

of the United states of America;

-b) grant compensatory damages to plaintiff in the sum of One Million, Five Hundred thousand dollars,

c) grant punitive damages to plaintiff in the sum of One Million, Five hundred thousand dollars,

d) grant plaintiff's cost of this action, including reasonable misc. fees.
Plaintiff adopts by reference paragraphs 1 through 26, Defendant Ray Kelly,NYC Police Commissioner, John Doe of Brooklyn Central Booking Correctional Department, at 120 Schermerhorn Street, [place of employment] their officers, agents, assistants, and employees egregiously violated plaintiffs Due Process Constitutional Rights and failed to provide a safe enviroment for the plaintiff charles Blake, by failing to provide a adequate number of guards, placeing plaintiff in an overcrowded holding pen, particularly on or about August 26, 2010. Knowing from prior experience, resulting a lack ordinary care:

a) that the practice made highly forseeable that detainee's and particularly Charles Blake would be hurt, harmed, and subjected to danger in a overcrowded court holding pen exceeding the seating limits established by law and common sense.

b) that the number of guards in the area provided insufficient protection and/or safety to plaintiff Charles Blake should such attacks occur.

Finally the acts of the defendants each of them subjected the plaintiff to cruel and unusual punishment in violation of the Eight and Fourteenth Amendments of the United States Constitution, and have caused the plaintiff to suffer damages in the amount of One Million, Five Hundred thousand Dollars, $1,500,000,00.

WHEREFORE, plaintiff respectfully prays this court to:

A) Permanently enjoin the defendants, their agents, officers, assistants,successors, employees, and persons acting in concert or cooperation with them from further violating the rights and privileges and immunities guaranteed to the plaintiff Charles Blake under the Constitution of the United States of America;

B) grant compensatory damages in the sum of One Million, Five hundred thousand dollars.

C) grant punitive damages to plaintiff in the sum of One Million, Five hundred

thousand dollars.

D) grant plaintiff's cost of this action, including reasonable Misc. fees.

Dated_____6|5|12_____

Mr. Charles Blake, 11-A-3257
FRANKLIN CORRECTIONAL FACILITY
62 Bare Hill Rd., P.O. Box 10
Malone, New York 12953


VERIFICATION

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF FRANKLIN  )


     I Charles Blake, being duly sworn, states that he is the Petitioner in this
action, and that the foregoing Petition is true to his own knowledge, except as to
matters therein stated to be alledged on information and belief and as to those
mattes he believes it to be true.


                         Respectfully Submitted,


                         Mr. Charles Blake, 11-A-3257
                         FRANKLIN CORRECTIONAL FACILITY
                         62 Bare Hill Rd., P.O. Box 10
                         Malone, New York 12953


SWORN TO BEFORE ME THIS

5th day of June, 2012

NOTARY PUBLIC

CAROLYN ST DENIS
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN FRANKLIN COUNTY
NO. 01ST6049154
COMMISSION EXPIRES OCT. 10, 2014

28 CFR Sec. 33.32, Certified Programs. (7)(i) Purpose: Providing alternatives

to pretrial detention, jail, and prison for persons who pose no danger to community.

(ii) Certified program: jail overcrowding alternatives to pretrial detention. This

program aims to control jail population through improved intake csreening which assures

that persons who should be in jail are detained, and that alternatives are available

for those requiring less maximum supervision. Particular care must be taken that persons

charged with violent crimes are detained as part of a planning phase, followed by

implementation of specific activites and services. Among the activities and services

 that may be funded are central intake screening, pretrial services, diversion to

detoxification centers, citation release, community corrections, sentencing alternatives,

and jail management information systems. Program objectives and elements are described

in greater detail in the Program Brief on Jail Overcrowding/Alternatives to pretrial

detention.

CODE OF FEDERAL REGULATIONS

TITLE 28 JUDICIAL ADMINISTRATION

CHAPTER I DEPARTMENT OF JUSTICE

PART 33- BUREAU OF JUSTICE ASSISTANCE GRANT PROGRAMS

SUBPART A- CRIMINAL JUSTICE BLOCK GRANTS

PURPOSE OF BLAOCK GRANT FUNDS

76 FR 82069.

33.31 (9) Eligible Purpose & Program

Providing Programs which alleviate prison & jail
overcrowding and identify existing [illegible] & [illegible]
suitable for prison use.

33.31 (10)
Providing management and technical assistance to
criminal justice personnel and [illegible] [illegible]
Prosecutorial and Judicial Personnel [illegible]

# EXHIBIT A

28 Mar 12   0957:27                                                    Page    1 of 4

### Kings County Hospital Center
451 Clarkson Avenue
Brooklyn, NY 11203

### Adult Med/Surg/Rehab Discharge Summary

**A copy of the Discharge Summary has been given to the patient on discharge**

## Patient Information:

    Name:Blake,Charles          DOB:22 Dec 57        Pt Tel#:(347) 686-1716
      MR#:2501985               Sex:M               Pt Loc :IP
    Visit#:2501985-1            Age:54Y


## General Discharge Information:

    Date of Admission          26 Aug 10
    Preceptor MD               Wadhwa,Ram, MD
    Date of Discharge          2 Sep 10
    Discharging MD             Tejani,Alexander, MD
    Primary Care Provider:
    Admitting Diagnosis        Closed dislocation of ankle
    Principal Diagnosis        Closed dislocation of ankle
    Secondary Diagnosis        Closed dislocation of ankle

## Clinical Information

    Admission Hx               52M s/p got into a fight with another gentleman and
                               was brought by police to & KCHC because of RLE gross
                               deformity, swelling and pain. No prior injuries. No
                               numbness.

                               No pmh/psh/nkda
                               Social negx3

                               AFVSS
                               PE of RLE:
                               Gross deformity
                               Mild swelling
                               Skin intact
                               Compartments soft
                               +ehl, gs, ta
                               2+ dp
                               SILT
                               NTTP at the knee, hip with FROM
                               TTP at the proximal fibula with swelling
                               Decrease ROM of the ankle secondary to pain

                               Imaging reviewed

                               a/p: 54m with R maisooneuve fx

28 Mar 12   0957:27                                                     Page   2 of 4

### Kings County Hospital Center
451 Clarkson Avenue
Brooklyn, NY 11203

### Adult Med/Surg/Rehab Discharge Summary

**A copy of the Discharge Summary has been given to the patient on discharge**

**Patient Information:**

Name:Blake,Charles              DOB:22 Dec 57        Pt Tel#:(347) 686-1716
MR#:2501985                     Sex:M                Pt Loc :IP
Visit#:2501985-1                Age:54Y

|  |  |
|---|---|
| | -pt had ankle reduced in ED |
| | Placed in long AO splint |
| | Ice and elevation |
| | Pain control |
| | Ekg |
| | Cxr |
| | Consented |
| | Labs reviewed |
| | Repeat bmp |
| | & OR tomorrow for surgery |
| Admitting Vitals | Ht: N/A; Wt: 76.2 kg; BP: 12/80; Pulse: 58 bpm; Resp: 20 BPM; Temp: 99.2 F |

Admission Physical

   General                        see note

Discharge Physical

   General                        In short leg cast. nvid, silt, brisk cap refill

   Hospital Course                Admitted to orthopedics. This is a 57-year-old male
who was seen yesterday in theemergency room after
suffering a right ankle injury after an altercation.
The patient denied any previous injuries. On x-ray,
the patient was found tohave Maisonneuve type right
ankle fracture with a small fragment of themedial
malleolus fracture. The patient also had a high
fibula fractureapproximately 3 cm from the fibular
head. Patient was closed reduced andsplinted in the
emergency room with acceptable post reduction films.
He wasadmitted for ice and elevation. Risks and
benefits of surgery were discussedwith the patient.
Risks included, but were not limited to:
Bleeding,infection, loss of range of motion of ankle,
loss of limb, neurovasculardamage, persistent pain,
persistent swelling, persistent numbness,
earlyarthritis. Questions were answered and informed
consent was obtained. Thepatient was taken to

28 Mar 12    0957:27                                                    Page    3 of 4

## Kings County Hospital Center
451 Clarkson Avenue
Brooklyn, NY 11203

## Adult Med/Surg/Rehab Discharge Summary

**A copy of the Discharge Summary has been given to the patient on discharge**

**Patient Information:**

Name:Blake,Charles          DOB:22 Dec 57          Pt Tel#:(347) 686-1716
MR#:2501985                 Sex:M                  Pt Loc :IP
Visit#:2501985-1            Age:54Y

operating room 8 and appropriate time-out was
performed. A tourniquet was placed on the right lower
extremity. The right lowerextremity was sterilely
prepped and draped. The right lower extremity
wasexsanguinated and the tourniquet was inflated to
300 mmHg. Total tourniquettime for the case was 1
hour and 10 minutes. An incision was then
madedirectly over the medial malleolus. It is noted
that the fracture on themedial malleolus appeared to
be chronic as there was abundant callus and
nohematoma. The callus was incised, and the medial
malleolus fragment was verysmall. At that time, it
was decided to excise the medial malleolus segmentas
there was abundant posteromedial malleolus. A Mitek
suture anchor wasthen placed in the medial malleolus,
and the deltoid ligament was suturedwith a Kessler
type. A small incision was then made over the
lateralmalleolus in the area of the syndesmosis.
Sharp dissection was down to thefibula exposing. A
2-hole plate was then selected. A pelvic reduction
clamp was then placedon the medial and lateral
malleolus, closing down the syndesmosis. A 2.5drill
bit under fluoroscopic guidance was then placed from
lateral to medial. This was done in both holes of the
plate. Two 3.5 cortical screws were thenplaced,
closing down the syndesmosis. The clamp was then
removed, and thesyndesmosis was deemed to be reduced
in the mortise radiographs. The deltoidligament was
then tied to the suture anchor. Copious irrigation
was done atthis time. Deep 0 Vicryl sutures were
placed in both wounds. Skin wasclosed using
interrupted 2-0 Vicryl sutures and 3-0 nylon for the
skin. Itis noted that on inspection of the joint,
there was a large osteochondraldefect in the medial
talus. This was drilled with a 2.0 K-wire. The
patienttolerated the procedure well and was
transferred stable to the PACU. He willbe
nonweightbearing on the right lower extremity. He was
placed in an AOsplint for comfort.

28 Mar 12  0957:27                                               Page   4 of 4

## Kings County Hospital Center
### 451 Clarkson Avenue
### Brooklyn, NY 11203

### Adult Med/Surg/Rehab Discharge Summary

**\*\*A copy of the Discharge Summary has been given to the patient on discharge\*\***

### Patient Information:

    Name:Blake,Charles          DOB:22 Dec 57      Pt Tel#:(347) 686-1716
     MR#:2501985                Sex:M              Pt Loc :IP
    Visit#:2501985-1            Age:54Y

                          He was seen by rehab and was cleared to be discharged
                          with a walker and crutch. He was placed in a short
                          leg cast.


Pertinent Labs/Results




### Discharge Instructions

    Discharge Disposition      discharged to police custody
    Discharge Rx(es)           Percocet5/325 Tablet; Colace Cap.  For additional
                               information see printout.
    Discharge Diet             Regular
    Discharge Activity(s)      NWB RLE
    Discharge Condition        improved
    Follow-Up Appointment      specialty clinic fracture clinic, Tuesday, Sept 7,
                               2010, 8am, E building, 8th floor    .

Patient Education


### Signatures

           A complete list of medications was provided to the patient
                      upon discharge from facility

# EXHIBIT B

*52453 McKinney's Correction Law § 500-b

# MCKINNEY'S CONSOLIDATED LAWS OF NEW YORK
## ANNOTATED
## CORRECTION LAW
## CHAPTER 43 OF THE CONSOLIDATED LAWS
## ARTICLE 20--LOCAL CORRECTIONAL FACILITIES

*Current through L.2011, chapters 1 to 54 and 57 to 495.*

### § 500-b. Housing of prisoners and other persons in custody

< [Deemed repealed Sept. 1, 2013, pursuant to L.1984, c. 907, § 12.] >

1. As used in this section, the term "chief administrative officer" shall mean the person responsible pursuant to section five hundred-c of this article for receiving and safely keeping persons committed to a county jail.

2. In any case in which the chief administrative officer has more than one jail under his jurisdiction, he may confine a civil or criminal prisoner in any such jail and may remove the prisoner from one jail to another, within the county, whenever he deems it necessary for his safekeeping, or for the prisoner's appearance at court.

3. No female confined in a county jail shall be assigned to or housed in a facility housing unit with a male;  and if detained on civil process, or for contempt, or as a witness, she shall not be put or kept in the same room with a man, except her husband.

4. No person under nineteen years of age shall be placed or kept or allowed to be at any time with any prisoner or prisoners nineteen years of age or older, in any room, dormitory, cell or tier of the buildings of such institution unless separately grouped to prevent access to persons under nineteen years of age by prisoners nineteen years of age or older.

5. Repealed.

6. The commission shall promulgate rules and regulations in accordance with subdivisions seven and eight of this section to assure that persons in custody in local correctional facilities will be afforded appropriate precautions for their personal safety and welfare in assignment to housing.

7. (a) Consistent with the commission's rules and regulations regarding the assignment of inmates to housing units, the chief administrative officer shall exercise good judgment and discretion and shall take all reasonable steps to ensure that the assignment of persons to facility housing units:

*52454 (1) fosters the safety, security and good order of the jail;  and

(2) affords appropriate precautions for the personal safety and welfare of persons in custody with particular attention to those who are known to be vulnerable to assault or any physical or mental abuse.

(b) The chief administrative officer shall consider the following in complying with this subdivision:

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

(1) prior victimization in jail or prison;

(2) prior history of mental illness;

(3) prior history of sex offenses;

(4) prior history of a hostile relationship with another inmate;

(5) prior attempts at self-injury or suicide;

(6) prior attempted escapes;

(7) any mental or physical handicapping condition;  and

(8) any other information concerning the safety or welfare of the inmate.

(c) In considering the above information, the chief administrative officer shall examine the following:

(1) records made available to such officer at the time of the commitment by the court or law enforcement agency;

(2) determinations made upon an interview with an inmate at the time of classification;

(3) records, to the extent relevant and known to the chief administrative officer, maintained by the department of corrections and community supervision and/or any local correctional facility in this state and which are accessible and available to the chief administrative officer;  and

(4) any other relevant information brought to the attention of the chief administrative officer by any person with knowledge of the conditions of the defendant.

8. Where the commission finds substantial noncompliance with commission rules and regulations with regard to (a) minimum staffing requirements;  or (b) maximum jail capacity and security requirements;  or (c) where it is determined that the county does not have an approved service plan in effect pursuant to article thirteen-A of the executive law or is found to be in non-compliance therewith, as provided in section two hundred sixty-three of such law, it shall prohibit the commingling of any of the following categories of inmates:

*52455 (1) persons in custody on civil process, or committed for contempt, or detained as witnesses with persons detained for trial or examination upon a criminal charge with convicts under sentence;

(2) persons detained for trial or examination upon a criminal charge with convicts under sentence;

(3) persons under nineteen years of age with persons nineteen years of age or older;  or

(4) a woman detained in any county jail or penitentiary upon a criminal charge or as a convict under sentence with a man;  and if detained on civil process, or for contempt, or as a witness in a room in which there are no other prisoners with a man, except with her husband.

Such prohibition shall continue until such time as the commission finds that the county is no longer in substantial noncompliance with paragraphs (a), (b) and (c) of this subdivision.

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

Notwithstanding the provisions of this subdivision to the contrary, classification as authorized pursuant to this section may occur without compliance with paragraphs (b) and (c) of this subdivision for a period not to exceed six months immediately following the submission of a plan to the division pursuant to section two hundred sixty-two of the executive law. During such six month period the commission shall undertake to review, observe and assess the classification of inmates in local correctional facilities as authorized under this section to thereby ascertain safeguards which should be incorporated in its rules and regulations. Further, during such six month period in which such classification shall be permitted pursuant to this subdivision, the commission shall evaluate whether a local correctional facility is in substantial noncompliance with rules and regulations regarding the requirements specified in paragraphs (a), (b) and (c) of this subdivision and shall determine at the end of such six month period whether substantial noncompliance exists. At the expiration of the six month period if the commission finds a local facility in substantial noncompliance, the commission shall order that the prohibition set forth in this subdivision immediately take effect. The commissioner shall advise the chief administrative officer of such facility of the specific nature of the noncompliance and the specific measures which should be undertaken to remedy the noncompliance. When such measures have been implemented, the chief administrative officer shall certify same to the commissioner and upon the verification thereof by the commissioner, shall permit the chief administrative officer to classify inmates as provided under this section. In the event substantial noncompliance is not found at the expiration of the six month period, then the local correctional facility may continue to classify inmates as authorized in this section.

*52456 9. The chief administrative officer shall forward to the commission a quarterly report relative to the housing of inmates. The report shall include, but not be limited to:

(a) all unusual incidents or assaults occurring in a housing unit;

(b) staffing;

(c) daily prisoner population counts;

(d) verification that the locality is maintaining security and supervision records as mandated pursuant to the commission's rules and regulations;

(e) court orders which have been issued and which relate to staffing, jail capacity or security requirements; and

(f) any other information requested by the commission and available to the chief administrative officer with respect to this section.

10. The commission shall conduct on-site inspections and review reports required by this section to monitor the assignment of persons to facility housing units as governed by this section.

11. The commission shall submit to the governor, the temporary president of the senate, the speaker of the assembly, the chairman of the senate crime and correction committee and the chairman of the assembly committee on codes, by March first of each year, its evaluation and assessment of housing in county jails, together with any recommendations with respect to the proper operation or improvement of housing in county jails.

12. The provisions of this section shall govern only the assignment of persons to facility housing units and shall not be construed to prohibit the commingling of persons during their participation in any facility program or activity, including meals and visitations.

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

13. Where in the opinion of the chief administrative officer an emergency overcrowding condition exists in a local correctional facility caused in part by the prohibition against the commingling of persons under nineteen years of age with persons nineteen years of age or older or the commingling of persons nineteen years of age or older with persons under nineteen years of age, the chief administrative officer may apply to the commission for permission to commingle the aforementioned categories of inmates for a period not to exceed thirty days as provided herein. The commission shall acknowledge to the chief administrative officer the receipt of such application upon its receipt. The chief administrative officer shall be permitted to commingle such inmates upon acknowledgment of receipt of the application by the commission. The commission shall assess the application within seven days of receipt. The commission shall deny any such application and shall prohibit the continued commingling of such inmates where it has found that the local correctional facility does not meet the criteria set forth in this subdivision and further is in substantial noncompliance with minimum staffing requirements as provided in commission rules and regulations. In addition, the commission shall determine whether the commingling of such inmates presents a danger to the health, safety or welfare of any such inmate. If no such danger exists the chief administrative officer may continue the commingling until the expiration of the aforementioned thirty day period or until such time as he determines that the overcrowding which necessitated the commingling no longer exists, whichever occurs first. In the event the commission determines that such danger exists, it shall immediately notify the chief administrative officer, and the commingling of such inmates shall cease. Such notification shall include specific measures which should be undertaken by the chief administrative officer, to correct such dangers. The chief administrative officer may correct such dangers and reapply to the commission for permission to commingle; however, no commingling may take place until such time as the commission certifies that the facility is now in compliance with the measures set forth in the notification under this subdivision. When such certification has been received by the chief administrative officer, the commingling may continue for thirty days, less any time during which the chief administrative officer commingled such inmates following his application to the commission, or until such time as he determines that the overcrowding which necessitated the commingling no longer exists, whichever occurs first. The chief administrative officer may apply for permission to commingle such inmates for up to two additional thirty day periods, in conformity with the provisions and the requirements of this subdivision, in a given calendar year. For the period ending December thirtieth, nineteen hundred eighty-four, a locality may not apply for more than one thirty day commingling period.

    **\*52457** 14. Repealed.

<div align="center">

**CREDIT(S)**

</div>

*(Added L.1984, c. 907, § 4.  Amended L.1984, c. 908, § 3;  L.1985, c. 574, §§ 1 to 9;  L.1987, c. 754, § 3;  L.2011, c. 62, pt. C, subpt. A, § 36, eff. March 31, 2011.)*

<div align="center">

&lt;General Materials (GM) - References, Annotations, or Tables&gt;

**HISTORICAL NOTES**

**HISTORICAL AND STATUTORY NOTES**

**2011 Electronic Pocket Part Update.**

</div>

L.2011, c. 62 legislation
    Subd. 7, par.  (c), subpar.  (3).  L.2011, c. 62, pt. C, subpt.  A. § 36, substituted "corrections and community supervision" for " correctional services".

    L.2011, c. 62, pt. C, subpt. A, § 49, subd.  (d), provides:

    "(d) that the amendments to paragraph c of subdivision 7 of section 500-b of the correction law made by section thirty-six of

<div align="center">

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

</div>

NY CORRECT § 500-b, Housing of prisoners and other persons in custody                    **Page 5**

this act shall not affect the repeal of such section and shall be deemed repealed therewith;".

<p align="center">**2003 Main Volume**</p>

L.1987, c. 754 legislation
    Subd. 5.  L.1987, c. 754, § 3, eff. Aug. 5, 1987, repealed former subd. 5, which applied to cities with a population of one million or more and related to segregation in the counties within New York city of persons in custody on civil process or contempt, and segregation of persons detained for trial or examination on a criminal charge, persons under 21, and women.

    Subd. 14.  L.1987, c. 754, § 3, eff. Aug. 5, 1987, repealed former subd. 14, which provided that subds. 3, 4, 8, 9, and 13 shall not apply to cities with a population of one million or more.

<p align="center">**2011 Electronic Pocket Part Update.**</p>

L.1984, c. 907 legislation
    L.1984, c. 907, § 12;  amended L.1987, c. 754, § 1;  L.1988, c. 421, § 3;  L.1989, c. 338, § 20;  L.1989, c. 339, § 5;  L.1990, c. 193, § 22;  L.1991, c. 511, § 2;  L.1992, c. 55, § 325;  L.1993, c. 60, § 13;  L.1994, c. 61, § 7, eff. April 18, 1994, retroactive to April 1, 1994;  L.1997, c. 435, § 57, eff. Aug. 20, 1997;  L.1999, c. 452, § 11, eff. Sept. 1, 1999;  L.2001, c. 95, § 15, eff. July 13, 2001;  L.2003, c. 16, § 13, eff. March 31, 2003;  L.2005, c. 56, pt. D, § 12, eff. April 12, 2005, deemed eff. April 1, 2005;  L.2007, c. 56, pt. C, § 12, eff. April 9, 2007, deemed eff. March 31, 2007;  L.2009, c. 56, pt. U, § 12, eff. April 7, 2009;  L.2011, c. 57, pt. A, § 12, eff. March 31, 2011, provides:

    *52458 "This act [L.1984, c. 907] shall take effect immediately [Aug. 6, 1984], except that the provisions of sections one through ten of this act [enacting Article 13-A of the Executive Law (§ 261 et seq.) and Correction Law §§ 485, 500, 500-b and 500-c, amending Correction Law § 500-g and N.Y. City Crim.Ct. Act § 88, and enacting provisions set out as notes under Executive Law § 261] shall remain in full force and effect until September 1, 2013 on which date those provisions shall be deemed to be repealed."

    L.1984, c. 907, § 4, as originally enacted, repealed § 500-b and added a new section 500-b (this section).  L.1984, c. 908, § 1, eff. Aug. 6, 1984, amended L.1984, c. 907, § 4, to provide that the provisions of § 500-b were to be suspended rather than repealed.

<p align="center">**2003 Main Volume**</p>

Derivation
    Former County Law of 1909 § 91, repealed L.1950, c. 691, § 1002.  Said section 91 was from County Law of 1892, c. 686, § 91;  originally revised from R.S. pt. 4, c. 3, tit. 1, § 1;  L.1847, c. 460.

<p align="center">**REFERENCES**</p>

<p align="center">**NEW YORK CODES, RULES AND REGULATIONS**</p>

<p align="center">**2003 Main Volume**</p>

Institutional security, see 7 NYCRR 1000.1 et seq.
Interpretation of age range provisions, see 7 NYCRR 110.1.
Maximum prisoner capacity, see 9 NYCRR 7040.1 et seq.
Special housing units, see 7 NYCRR 300.1 et seq.
Staffing requirements, see 9 NYCRR 7041.1 et seq.

<p align="center">**REFERENCES**</p>

<p align="center">**LIBRARY REFERENCES**</p>

<p align="center">**2003 Main Volume**</p>

Prisons ☜4(4), 12, 13(5), 13.3, 17(1, 1).
C.J.S. Prisons and Rights of Prisoners §§ 6, 20 to 21, 25 to 27, 50 to 53, 55, 59, 63 to 66, 68 to 69, 71 to 73, 76 to 79, 116 to 124, 129, 133, 141.

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

NY CORRECT § 500-b, Housing of prisoners and other persons in custody                    **Page 6**

In a caselaw database, run TO(310) or 310k[add key number] to retrieve cases related to Prisons. **\*52459**

## REFERENCES

## RESEARCH REFERENCES

Encyclopedias

NY Jur. 2d, Penal & Correctional Institutions § 101, Separation of Inmates.

## ANNOTATIONS

## NOTES OF DECISIONS

**Jails within scope of section 1**
**Separate housing 2**

### 1. Jails within scope of section

This section providing that persons under the age of 21 shall not be put or kept in the same room with prisoners 21 years of age or older is primarily concerned with county jails maintained by sheriffs, and excludes the courthouse detention cells at New York City Criminal Court building from its application. Brito v. Ross, 1977, 43 N.Y.2d 229, 401 N.Y.S.2d 61, 371 N.E.2d 823. Infants ☞68.3; Infants ☞275

### 2. Separate housing

Persons detained for trial on criminal charges or as witnesses should not be put or kept in same room with convicts under sentence. People v. Williams, 1944, 292 N.Y. 297, 55 N.E.2d 37. Prisons ☞366

Sheriff may house both pretrial detainees and convicted prisoners separately within the same building. People v. Von Diezelski, 1974, 78 Misc.2d 69, 355 N.Y.S.2d 556. Prisons ☞228; Prisons ☞366

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

_____

Charles Blake, Claimant

-against-

County of Kings County,
                 defendants

NOTICE OF MOTION TO SERVE
LATE CLAIM

Index No.# 3321- 2012

_____

       PLEASE TAKE NOTICE that upon the affidavit of Charles Blake, sworn to on the

_____30_____ day of December _____, 20 11, and upon the annexed copy of the proposed

Notice of Claim, duly verified _____ , 20 _____, the undersigned

will move this court at a term Part_____ room No._____, thereof at

360 Adams Street, Brooklyn, New York on _16th_ day of January, 2012, at 9o'clock am

of that day or as soon thereafter as counsel can be heard for an order pursuant to

N.Y. Gen. Mun. Law § 50-e(5), granting leave at this time to serve the annexed

proposed Notice of Claim after the expiration of the statutory period for such

service specified in N.Y. Gen. Mun. Law § 50-e(1) and for such further and other

relief as to the court may seem just and proper.

       The above-entitled action is brought for personal injuries.

       Pursuant to N.Y. C.P.L.R. 2214(b), answering affidavits if any, are required

to be served upon the undersigned at least seven days before the return date of

this motion. [] (check box if applicable)

Dated:_____day of_____, 20____.

                             Respectfully Submitted

                             Mr. Charles Blake, Pro-se

To:
Office of the Comptroller of New York
1 Centre Street, Room 530
New York, New York   10007


cc: cb (file)

STATE OF NEW YORK
SUPREME COURT, COUNTY OF KINGS

Charles Blake, Claimant,

-against

The County of Kings County, New York

AFFIDAVIT IN SUPPORT OF MOTION
FOR LEAVE TO SERVE LATE NOTICE OF
CLAIM - Mental Incapacity of
Claimant.
Index No.# 3321-2012

State of New York )
                 )  ss.:
County of Franklin )

    Charles Blake, being duly sworn, deposes and says:

That I am a resident of Franklin Correctional Facility, in the Town of Malone, County

of Franklin, State of New York, and I am over the age 18 and I am the applicant herein.

I submit this affidavit in support of an application for an Order extending the time

to serve a Notice of Claim for personal injuries against the County of Kings, while

being held at the Kings County Court Holding Pen, and permitting service after the

expiration of the statutory period of ninety days.

I sustained personal injuries on or about the 3rd day of September, 2010, as a result

of a gang assult which is located at 120 Schermerhorn Street, Brooklyn in the Custody

of New York City Police Officials awaiting Court. The said assult was a result of the

failure of the Police Officials to adequately protect claimant from violent attacks.

The assultive behavior of the other prisoner's upon claimant occurred in the Court

holding pen at the Courthouse. The officials failed to reasonably take measures to

provide safety in an area known for assultive behavior. As a result of the assult

claimant recieved a fracture of talus, tibia and fibula and a tear of the interosseous

membrane requiring open redaction and internal fixation with a metal rod and screw,

the injury has resulted in atrophy and a limitation of claimants physical activities.

All occuring on the 3rd day of September, 2010 due to the failure of officials to

respond to claimants cry for help while he was beaten by a group of assailants in the

courts holding pen. The County in additions to having improperly provided claimant a

safe enviroment, neglected to post a security officer in or nearby the area so that

claimants cries for help could be heard. A notice of Claim for my injuries against

(2)

- the County was not served or filed by me within ninety days period required by
General Muncipal Law § 50-e(1), and the time for filing of such claim has expired.
That the failure to file such claim came about because of my incapacity. Claimants
inability to read and or write, with no formal education. Claimant never knew that he
was entitled to damages for the injuries he sustained and the claimant also has no
formal training and/or education. Claimant ignorance of court filing requirement,
and having doubts whether or not he was entitled to compensation for the physical
assult that occurred  delayed claimant and was cause for claimants failure to file
timely notice of intent. The defendants have had notice of the essential facts
constituting the claim in that after the injury claimant was transported to the
hospital and treated for a broken leg and remained in the hospital several days
at Kings County Medical Center and continued treatment after release on bail.
The defendant did in fact investigate the assult and injury upon claimant.
Claimant continued recieving treatment at Kings County medical center upon his
release from Police custody. To which he had his cast replaced and re-casted on
three seperate occasions, and claimant had metal rod and screws attached to the
fractured talus -tibia and fibula. Claimant also recieved physical threapy treatment
and assistance re-learning to walk on injured leg. Claimant believes that he has no
other remedy for the defendants failure to provide him safety in the court holding
pen. Claimant also believes that his claim in this action has merit.  Claimant
believes that this claim against the defendants not groundless nor frivolous
based upon the entire record and the events leading and causing claimants injury.
In addition to the foregoing, it was not possible up until June 7th 2011, to
asertain claimants cause for action against the defendants. At which time the
claimant was recieved into the New York State Department of Correctional Services.
At which time the extent of claimants injury was explained to him and also the
extent of claimants future and permanent injury to his leg.
It is therefore respectfully requested that the plaintiffs be granted leave to
serve the notice of claim hereto attached and made apart of the moving papers.

(3)

Finally in addition to claimants affadavit of support of motion for leave to serve late notice of claim. Despite claimants mental incapacity due to a lack of education, whom cannot read and/or write. Claimant was represented by Counsel for the offense that caused his arrest. Claimants counsel complete failure to properly advise the claimant of his rights under the circumstances is clear proof of counsels total ineffectiveness to hold his sworn oath to his clients.  Claimant prays that this court will allow claimants claim to go forward and allow claimants permisson to file a late notice of claim against the defendants Kings County Police Officials. Claimant believes that the County has had knowledge of the essential facts and that there should be no prejudice caused by the delay.


                                   Respectfully Submitted


                                   Mr. Charles Blake, 11A3257
                                   FRANKLIN CORRECTIONAL FACILITY
                                   62 Bare Hill Rd. P.O. Box 10
                                   Malone, New York  12953


Sworn to before me this
30th Day of December, 2011


NOTARY PUBLIC

          MAUREEN LAYHEE
      Notary Public, State of New York
        Qualified in Franklin County
           Reg. No. 01LA4975722
      Commission Expires Dec. 17, 20 __ 14



CC: Office of the Comptroller of New York
    1 Centre St. Rm 530
    New York, New York  10007


CC: file,cb

STATE OF NEW YORK
SUPREME COURT, COUNTY OF KINGS

_____

Charles Blake, DIN#11A3257

-against-                                    Index No. 332.1 - 2012

                                             CLAIM

The County of Kings County New York

_____

TO: _____, Office of the Comptroller of New York
                       KINGS COUNTY

       PLEASE TAKE NOTICE, that Charles Blake, pursuant to the statutes in such cases

made and provided, do hereby make claim against THE COUNTY OF KINGS, New York

(the County) and in support of such claim do state the following:

1. My post office address is 62 Bare Hill Rd. P.O. Box 10, Malone, N.Y. 12953 I am

appearing in this matter as a pro-se claimant and I am presently residing at the

New York State Department of Correctional Services, at FRANKLIN CORRECTIONAL FAC;

2. This claim is one against the County for recovery of personal injuries sustained

as a result of negligence of the County its agents, servants and employees, specif

-ically of the New York City Police Department it deputies and employees of the

Court Holding Pen, Holding cells mauntained in Brooklyn, N.Y..

3. The time when the claim arose and the time when the injuries herein alledgedly

were sustained, was on the 3rd day of September, 2010 at 8:30 a.m. in the morning

of that day.

4. The place where the injuries were sustained was in the Court Holding Cell holding

pen.

5. The said injuries for which claim is hereby made arose in the following manner,

to wit: While waiting to be called to court in the holding pen with about 45 to 50

other prisoners in a crowded holding pen I was assulted, knocked out unconscious,

and when I awoke in great pain, my leg was broken and ankle twisted all the way

around in the opposite direction. The assult occurred by a group of unknown prisoners

also being held in the court holding pen. At 8:30 a.m. when breakfast was called a

group of prisoners moved towards the gate to get breakfast. At which time I sat down-

(2)

- as other prisoners got thier meal. I had been standing on the wall for a long
while and sat down on the bench. I was not hungry for breakfast. The holding pen
has seating for about 25 individuals, I sat down. So thereafter two unknown other
prisoners approached me and *I* was told to get out of their seat? I said no this is
not your seat. At that moment one of the two hit me in the face, I tried to stand
up and was punched again from the back, I turned around and was hit from all
directions. I was screaming for help and no help came. Soon thereafter I was laid
out unconscious. When I awoke my Right Foot was turned backwards. I began again
to scream for help. The officer responded, removed some prisoners from the cell and
called Emergency Medical Services (EMS) . I was taken by ambulance to the KINGS
COUNTY MEDICAL CENTER. I stayed in the hospital for almost two weeks recieving
various treatments for my broken and/or fractured Right Leg. Including surgery
wherein a rod and plate was inserted in my leg. I was heavily medicated on some
unknown medication.  The County and its employees were negligent in failing to
segregate and/or adequately supervise said holding pen in a over-crowded condition
with a variety of prisoners with known and unknown violent propensities.
6. So far as I am now able to determine, the injuries and damages sustained by me
and for which I make claim consist of the following, to wit: A fracture of talus -
tibia and fibula and a tear of the interosseous membrane requiring open reduction,
a cast, and internal fixation with a metal rod and screws that are still in my leg.
claimant believes the injury will result in atrophy and limitations with physical
activities for the rest of claimants life, with consistent pain permanently. This
injury resulted in confinement in the Kings County Medical Center for a period of
two weeks.
WHEREFORE,I respectfully request that my claim be allowed and paid by the county and
award the amount of Two Million, Five Hundred Thousand Dollars in compensation.
Dated: December 30th 2011

Mr. Charles Blake, DIN # 11A3257

(3)

Respectfully Submitted

Mr. Charles Blake

Public Notary

Dec. 30, 2011

Maureen Layhee

MAUREEN LAYHEE
Notary Public, State of New York
Qualified in Franklin County
Reg. No. 01LA4975722
Commission Expires Dec. 17, 20 14

cc: cb file
cc: Office of the Comptroller of New York
    1 Centre Street, Rm 530
    N,Y., N.Y. 10007

## **VERIFICATION**

STATE OF NEW YORK   )

                            ss.:

COUNTY OF FRANKLIN )

    <u>Charles Blake</u>, being duly sworn, states that he is the Petitioner, in this

action and that the foregoing Petition, is true to his own knowledge, except as to matters therein

stated to be alleged on information and belief and as to those matters he believes it to be true.

                                  Respectfully submitted,

                                  Charles Blake, 11A3257

                             **Petitioner, Pro Se**

**Sworn to before me this**

<u>30</u> **day of** <u>December</u>   ~~XXXX~~   2011

**Notary Public**

MAUREEN LAYHEE
Notary Public, State of New York
Qualified in Franklin County
Reg. No. 01LA4975722
Commission Expires Dec. 17, 20 __14__

STATE OF NEW YORK
COUNTY OF *KINGS*    SUPREME COURT

————————————————————————————x

Affidavit in Support of
Application Pursuant
to CPLR §1101(f)

*In the matter of the Application of*

*Charles Blake, #11A3257*

*for Poor Person Status pursuant to
CPLR §1101(f).*

County of Kings, King County

————————————————————————————x

Index # 3321 - 2012

DIN # 11A3257

NYSID # _____

State of New York    )
County of *Franklin*    ) ss:

Charles Blake        ; being duly sworn, says:

    1. I am the Plaintiff/Petitioner in the above-captioned action/proceeding; I am a sentenced inmate incarcerated in a federal/state/local correctional facility (state place of incarceration: Franklin Corr; Facility ), and I submit this affidavit in support of my application for poor person status in such action/proceeding.

    2. During the past six months, I was incarcerated in the following other federal, state, or local correctional facilit(ies) in addition to the facility in which I am now incarcerated:

Downstate Correctional Facility
Rikers Island Correctional Facility

    3. I currently receive income from the following sources, exclusive of correctional facility wages: friends & family

    4. I own the following property (list all real and personal property, including bank accounts and securities in which you have a beneficial interest, other than miscellaneous personal property of nominal value):

Property:    O    Value:

    5. I am responsible for payment of the following debts:

Debt:         Amount:

6. I have no savings, property, assets or income other than as set forth herein.

7. I am unable to pay the costs, fees and expenses necessary to prosecute this action/proceeding.

8. There is no other person who has a beneficial interest in the recovery I am seeking in this action/proceeding who is able to pay the fees, costs and expenses necessary to its prosecution.

9. The nature of the action/proceeding and the facts therein are described in my pleadings and in other papers filed with the court.

10. I have made no prior request for this relief in this action/proceeding.

_(signature)_

Charles Blake, 1143257

Sworn to before me this 30th day of Dec 2011

_Maureen Layhee_
Notary Public

Notary Public, State of New York
Qualified in Franklin County
Reg. No. 01LA4975722
Commission Expires Dec. 17, 20 __

MAUREEN LAYHEE
Notary Public, State of New York
Qualified in Franklin County
Reg. No. 01LA4975722
Commission Expires Dec. 17, 20 __ /14

## AUTHORIZATION

I, Charles Blake, inmate number 1143257, request and authorize the agency holding me in custody to send to the Clerk of the Court certified copies of the correctional facility trust fund account statement (or the institutional equivalent) for the past six months.

In the event my application for poor person status in the above-captioned action/proceeding is granted by the Court, I further request and authorize the agency in which I am incarcerated to deduct the amount of any outstanding obligation reported to such agency by the Court pursuant to CPLR 1101(f)(2) from my correctional facility trust fund account (or institutional equivalent) and to disburse such money as instructed by the Court.

This authorization is furnished in connection with the above-captioned action/proceeding, and shall be valid as to any agency into whose custody I may hereafter be transferred.

I UNDERSTAND THAT THE FULL AMOUNT OF THE OUTSTANDING OBLIGATION REFERRED TO HEREIN WILL BE PAID BY AUTOMATIC DEDUCTION FROM MY CORRECTIONAL FACILITY TRUST FUND ACCOUNT EVEN IF MY CASE IS DISMISSED.

_(signature)_

Charles Blake, 1143257

## AFFIDAVIT OF SERVICE

**NAME OF DOCUMENT(S):** Late Notice of Intent, with Claim, with Verification
with Affidavit of Service, upon

STATE OF NEW YORK    )
                              ss.:
COUNTY OF FRANKLIN)

I, Charles Blake, 11A3257                , being duly sworn, deposes and says:

That I have on this 30 day December , 2011, placed and submitted the within copies of the
document(s) or moving papers indicated above, to be duly mailed via the U.S. Postal Service,
through the institutional mailroom here at the Franklin Correctional Facility, Malone New York
12953, in a pre-paid first class envelope to the following parties:

Mr. John Liu, Comptroller
Office of the Comptroller
of New York City
1 Centre Street, Room 530
New York, New York   10007

Supreme Court Kings County
Court Clerk, Thomas R. Kilfoyle
360 Adams Street
Brooklyn, New York 11201

Respectfully submitted,

Charles Blake, #11A3257
Franklin Correctional Facility
62 Bare Hill Road, Box 10
Malone, New York 12953

Sworn to before me this
  30   day of December , 2011

Notary Public

MAUREEN LAYHEE
Notary Public, State of New York
Qualified in Franklin County
Reg. No. 01LA4975722
Commission Expires Dec. 17, 20 14

# REQUEST FOR JUDICIAL INTERVENTION
UCS-840  (3/2011)

**Supreme**                    COURT, COUNTY OF <u>KINGS</u>

Index No: <u>3321-2012</u>          Date Index Issued: _____

CAPTION:

Mr. Charles Blake, #11A3257
FRANKLIN CORRECTIONAL FACILITY

**Plaintiff(s)/Petitioner(s)**

-against-

Kings County,New York
New York City Police Department

**Defendant(s)/Respondent(s)**

## NATURE OF ACTION OR PROCEEDING

### MATRIMONIAL
- O Contested
- O Uncontested

NOTE: For all Matrimonial actions where the parties have children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum.

### TORTS
- O Asbestos
- O Breast Implant
- O Environmental: _____
  *(specify)*
- O Medical, Dental, or Podiatric Malpractice
- O Motor Vehicle
- O Products Liability: _____
  *(specify)*
- XXⓧ Other Negligence: *Personal Injuries*
  *(specify)*
- O Other Professional Malpractice: _____
  *(specify)*
- O Other Tort: _____
  *(specify)*

### OTHER MATTERS
- O Certificate of Incorporation/Dissolution    [see NOTE under Commercial]
- O Emergency Medical Treatment
- O Habeas Corpus
- O Local Court Appeal
- O Mechanic's Lien
- O Name Change
- O Pistol Permit Revocation Hearing
- O Sale or Finance of Religious/Not-for-Profit Property
- O Other: _____
  *(specify)*

### COMMERCIAL
- O Business Entity (including corporations, partnerships, LLCs, etc.)
- O Contract
- O Insurance (where insurer is a party, except arbitration)
- O UCC (including sales, negotiable instruments)
- O Other Commercial: _____
  *(specify)*

NOTE: For Commercial Division assignment requests [22 NYCRR § 202.70(d)], complete and attach the COMMERCIAL DIV RJI Addendum.

### REAL PROPERTY
- O Condemnation
- O Foreclosure
Property Address: _____
Street Address        City        State        Zip

NOTE: For Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the FORECLOSURE RJI Addendum.
- O Tax Certiorari - Section: _____ Block: _____ Lot: _____
- O Other Real Property: _____
  *(specify)*

### SPECIAL PROCEEDINGS
- O CPLR Article 75 (Arbitration)   [see NOTE under Commercial]
- O CPLR Article 78 (Body or Officer)
- O Election Law
- O MHL Article 9.60 (Kendra's Law)
- O MHL Article 10 (Sex Offender Confinement-Initial)
- O MHL Article 10 (Sex Offender Confinement-Review)
- O MHL Article 81 (Guardianship)
- O Other Mental Hygiene: _____
  *(specify)*
- O Other Special Proceeding: *Personal Injuries*
  *(specify)*

## STATUS OF ACTION OR PROCEEDING

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | O | O | If yes, date filed: _____ |
| Is this action/proceeding being filed post-judgment? | O | O | If yes, judgment date: _____ |

For Court Clerk Use Only
IAS Entry Date
Judge Assigned
RJI Date

**NATURE OF JUDICIAL INTERVENTION** *Check ONE box only AND enter additional information where indicated.*

- ○ Infant's Compromise
- ○ Note of Issue and/or Certificate of Readiness
- ○ Notice of Medical, Dental, or Podiatric Malpractice    Date Issue Joined: _____
- ○ Notice of Motion    Relief Sought: _____    Return Date: _____
- XXX ⊗ Notice of Petition    Relief Sought: <u>Permission file late</u>    Return Date: <u>January 16, 2012</u>
- ○ Order to Show Cause    Relief Sought: _____    Return Date: _____
- ○ Other Ex Parte Application    Relief Sought: _____
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ○ Other (specify): _____

**RELATED CASES** *If any related actions. For matrimonial actions, include any related criminal and/or Family Court cases. If additional space is required, complete and attach the RJI Addendum. If none, leave blank.*

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES** *For parties without an attorney, check the "Un-Rep" box AND enter the party address, phone number and e-mail address in the space provided. If additional space is required, complete and attach the RJI Addendum.*

| Un-Rep | Parties | Attorneys *Provide name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case.* | Issue Joined (Y/N) | Insurance Carrier(s) |
|---|---|---|---|---|
| ☐ | Kings County **Last Name** New York City Police **First Name** Primary Role: Secondary Role (if any): | Liu **Last Name** John **First Name** **Firm Name** New York City Comptrollers Office **Street Address** **City** **State** **Zip** 1 Centre Street, Room 530, N.Y., N.Y. 10007 **Phone** **Fax** **e-mail** | ○ YES ⊗ NO |  |
| ☐ | **Last Name** **First Name** Primary Role: Secondary Role (if any): | **Last Name** **First Name** **Firm Name** **Street Address** **City** **State** **Zip** **Phone** **Fax** **e-mail** | ○ YES ○ NO |  |
| ☐ | **Last Name** **First Name** Primary Role: Secondary Role (if any): | **Last Name** **First Name** **Firm Name** **Street Address** **City** **State** **Zip** **Phone** **Fax** **e-mail** | ○ YES ○ NO |  |
| ☐ | **Last Name** **First Name** Primary Role: Secondary Role (if any): | **Last Name** **First Name** **Firm Name** **Street Address** **City** **State** **Zip** **Phone** **Fax** **e-mail** | ○ YES ○ NO |  |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated: <u>December 30, 2011</u>                              **SIGNATURE**

_____                    Mr. Charles Blake, 11A3257



**POLICE DEPARTMENT**
**LEGAL BUREAU**
F.O.I.L. UNIT, ROOM 110C
ONE POLICE PLAZA
NEW YORK, NY 10038

July 2, 2012

Charles Blake 11A3257
Franklin Cor. NY 12953

File # 12PL10667
Your File #

Dear Sir or Madam:

This is in response to your letter dated, 1/17/12 in which you request access to certain records under the New York State Freedom of Information Law ("FOIL").

☒ Responsive to your request, the following document(s) have been accessed and/or photocopied: Copy of arrest report(9/10/10) and complaint report.

☒ Redactions have been made to the document(s) in that release of the information would represent an unwarranted invasion of personal privacy and would endanger the life and safety of any person {§ 87.2 (b) and (f)}.

XX No record of arrest on 3 Sep10 and also no record of Medical Treatment. Your arrest in August has been sealed. A notarized letter is required to release the report.

☒ In total,  3 page(s) have been copied. Please remit payment of $0.75
   ☒ Documents are enclosed.

   ☐ Upon receipt of payment, documents will be mailed.

**PAYMENT PROCEDURE**
Send check or money order **Payable to the "N.Y.C.P.D" (NO CASH)**

**Mail payment to:**
New York City Police Department, One Police Plaza –Room 110C, NYC 10038
**Note: Please include the FOIL number on the check or money order**

**APPEAL PROCEDURE**
You may appeal this decision or any portion thereof in <u>writing</u>, within thirty (30) days of the date of this letter, and forward it to:

**Jonathan David**
Records Access Appeals Officer, N.Y.C.P.D, One Police Plaza-Room 1406, NYC 10038-1497

Sincerely,

Richard Mantellino
Lieutenant
Records Access Officer

COURTESY • PROFESSIONALISM • RESPECT



RECEIVED

POST OFFICE

United States District
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 230
New York, New York    10007

Charles Brite #143257
Franklin Cadd Facility
62 Bare Hill Rd., PO Box 10
Malone, New York   12953

USM SDNY