UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES BLAKE,<br><br>         Plaintiff,<br><br>– against –<br><br>RAYMOND KELLY, Commissioner, New York City Police Department, ISRAEL SEXTON, Sergeant, New York City Police Department, and THE CITY OF NEW YORK,<br><br>         Defendants. | **OPINION AND ORDER**<br>12 Civ. 7245 (ER) |

Ramos, D.J.:

  *Pro se* Plaintiff Charles Blake (the "Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against former New York Police Department Commissioner Raymond Kelly ("Kelly"), Sergeant Israel Sexton ("Sexton"), and the City of New York (the "City," and together with Kelly and Sexton, the "Defendants").  The Plaintiff alleges that he was assaulted and injured while awaiting arraignment in the holding cell of the New York State Supreme Court, Kings County.  Am. Compl. 1-6, Doc. 18.

  Presently before the Court is Defendants' motion to dismiss the Complaint under Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Doc. 33.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**I.  Factual Background**

  The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

1

On August 26, 2010 Plaintiff was held as a pretrial detainee at the Brooklyn County Court's Central Booking Detention Holding Facility in Brooklyn, New York.  Am. Compl. 3.[1]  Overcrowding forced multiple detainees, including Plaintiff, to sit or lie on the floor, rather than in seats, within the holding cell.  *Id.*  Detainees made several complaints to the holding cell officers regarding the overcrowding and shortage of seats.  *Id.*  At 6:45 p.m., approximately fifteen detainees left the holding cell to receive their dinner.  *Id.*  Plaintiff sat in a seat that opened up as a result.  *Id.*  One of the detainees returned to find Plaintiff sitting in the seat and demanded that he move.  *Id.* at 4.  When Plaintiff refused, the detainee began to physically assault Plaintiff.  *Id.*  A second detainee then joined Plaintiff's assailant, and started to severely beat Plaintiff.  *Id.*

Because the detainee holding cell was left unmonitored, Plaintiff was subjected to beatings for ten minutes before the first officer—Sergeant Sexton—arrived.  *Id.*  Initially, Sexton verbally demanded that the assailants stop beating Plaintiff, but Sexton "did not physically intercede to prevent further physical abuse upon [Plaintiff]."  *Id.*  After his verbal demands failed, Sexton went to seek assistance.  *Id.*  Sexton then returned approximately five minutes later with two other officers who helped break up the altercation.  *Id.*  After Sexton observed that Plaintiff had facial swelling, "defensive cuts" to his back, and a potentially fractured right ankle, he sent for emergency medical personnel; they arrived approximately fifteen minutes later.  *Id.*  Staff then transported Plaintiff to Kings County Hospital.  *Id.*

Plaintiff claims that, as a result of Defendants' actions, he suffered serious injuries, including:  closed dislocation of his right ankle, a right ankle fracture, blunt trauma, facial lacerations, severe headaches, dizziness, difficulty sleeping, depression and mental anguish.  *Id.*

---

[1] The Court notes that Plaintiff's Amended Complaint did not include page numbers.  As a result, the Court will refer to the page numbers provided by the Court's electronic filing system (ECF).

at 6.  Plaintiff attached to his Amended Complaint various medical records, designated as Exhibit A,[2] which corroborate the allegations that he suffered a long-term or permanent physical injury.  Plaintiff underwent two surgical operations on his right ankle, and was referred to physical therapy afterwards.  Am. Compl. Ex. A.  The records provided also indicate that Plaintiff may need further surgical work done in the future.  *Id.*  Plaintiff claims he is unable to stand for long periods of time, cannot run and is unable to climb stairs without holding on to a rail for support.  *Id.* at 6.

Plaintiff alleges that the conditions of his confinement on August 26, 2010 violated his rights under the Eighth Amendment on several grounds.  *Id.* at 5.  First, Plaintiff asserts that the Defendants' deliberate indifference to the conditions of his confinement violated his civil rights.  *Id.*  The overcrowding in the holding cell caused excessive noise and anxiety, and ultimately created an unsupervised "den of violence."  *Id.*  Plaintiff also asserts that Sexton failed to exercise adequate care for Plaintiff's safety by failing to prevent reasonably foreseeable physical abuse.  *Id.* at 4.  Lastly, Plaintiff claims that Defendants deliberately and negligently exceeded the design capacity requirements for the holding cell.  *Id.* at 5.  Accordingly, Plaintiff seeks a total $10,000,000 judgment against the Defendants jointly and severally.  *Id.* at 9.

A. **Procedural History**

On September 24, 2012, Plaintiff commenced this action by filing the Complaint.  Compl., Doc. 3.  The Complaint included Commissioner Kelly and a John Doe Defendant.  *Id.*  Given Plaintiff's *pro se* status, the Court directed the Clerk of the Court to amend the caption of

---

[2] In a Rule 12(b)(6) analysis, a district court generally must confine itself to the four corners of the complaint and look only to the allegations therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, a court may also consider allegations in documents that are either attached to the complaint, incorporated by reference or integral to the complaint, provided that there is no dispute regarding their authenticity, accuracy or relevance.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).  The Court finds that the medical records contained in Exhibit A may properly be considered in connection with the instant motion.

this action to include Defendant New York City and ordered the New York City Law Department to provide the identity and service address of the John Doe Defendant. Doc. 7. On February 22, 2012, the New York City Law Department ascertained the identity of the John Doe Defendant to be Sergeant Sexton. Doc. 12. Plaintiff then filed an Amended Complaint against Defendants on April 10, 2013. Doc. 18. The case was transferred to the undersigned from the Honorable Judge Colleen McMahon on July 17, 2013.

Defendants construe Plaintiff's Amended Complaint as raising claims under the due process clause of the Fourteenth Amendment for deliberate indifference to his safety and conditions of confinement. Through the instant motion, Defendants seek dismissal of Plaintiff's claims on the grounds that Plaintiff (1) fails to state a claim under 42 U.S.C. § 1983 for deliberate indifference against Sexton; and (2) fails to allege personal involvement by Kelly in a constitutional violation. Defs.' Mem. 1, 6, Doc. 35. On May 28, 2014, Plaintiff filed his memorandum of law in opposition to Defendants' motion. Pl.'s Opp., Doc. 38. Rather than file a reply brief, on June 9, 2014, Defendants submitted a letter to the Court indicating their intention to rely on the arguments set forth in their opening papers.[3]

## II. Discussion

### A. Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

---

[3] The Court notes that Defendants' memorandum of law solely refers to Sexton and Kelly, and does not advance any arguments to dismiss the City from the instant action. Accordingly, the City will not be dismissed.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker*, 717 F.3d at 124; *see also, e.g.*, *Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The same standard applies to motions to dismiss *pro se* complaints. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret *a pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). In order to survive a motion to dismiss, a plaintiff's pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders naked assertions devoid of further factual enhancement"

5

will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and alterations omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### B. Plaintiff Fails to Allege Defendant Kelly's Personal Involvement

Defendants argue that Plaintiff has failed to allege Kelly's personal involvement in any of the alleged constitutional deprivations. Defs.' Mem. 7-8. As a general matter, a prisoner who brings a § 1983 claim against individual defendants must allege that they were directly and personally involved in the alleged constitutional deprivations. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *see also Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").[4]

Moreover, a defendant cannot be held liable based solely upon his supervisory capacities or under a theory of *respondeat superior*. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "Mere presence in the 'prison chain of command' is not sufficient to demonstrate personal involvement for purposes of [§] 1983." *Rivera v. Bloomberg*, No. 11 Civ. 629 (PGG),

---

[4] In *Colon v. Coughlin*, the Second Circuit held that a plaintiff may adequately allege personal involvement by showing that the defendant: (1) participated directly in the alleged constitutional violation; (2) after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful act; or (5) exhibited deliberate indifference to rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. 58 F.3d 865, 873 (2d Cir. 1995). "Only two *Colon* categories survive after *Iqbal*—(1) a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation, and part of (3) if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate." *McNair v. Kirby Forensic Psychiatric Ctr.*, No. 09 Civ. 6660 (SAS), 2010 WL 4446772, at *6 (S.D.N.Y. Nov. 5, 2010); *but see Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standard[] of the … Eighth Amendment[], the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.").

2012 WL 3655830, at *8 (S.D.N.Y. Aug. 27, 2012) (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam)).

Here, Plaintiff's sole allegation in the Amended Complaint regarding Kelly asserts that he "operated" and "controlled the safety of" the Brooklyn County Court's Central Booking Detention Holding Facility "through his supervisors, agents, servants, officers, and employees." Am. Compl. 3. In his original complaint, Plaintiff additionally alleges that Kelly failed to exercise ordinary care because the practice of permitting overcrowded holding cells in the Brooklyn Detention Center created a foreseeable risk that pretrial detainees would be attacked, and that Kelly was "grossly negligent" in failing to protect Plaintiff. Compl. ¶ 23.[5]

Nevertheless, even construing the allegations in the light most favorable to him, the Court finds that Plaintiff fails to adequately allege Kelly's personal involvement. As in *Colon*, Plaintiff claims that Kelly was grossly negligent in failing to train or supervise his subordinates, but fails to set forth facts about Kelly within his own knowledge; his allegations "certainly contain[] nothing that would support a claim that [Kelly] either knew or should have known of the events of which [Plaintiff complains." 58 F.3d at 873-74. Indeed, "[a]side from the entirely conclusory allegation" that Kelly may have been "aware of and acquiesced to the unlawful practices," Plaintiff "offers no factual allegations against [Kelly], assuming, erroneously, that his mere status as DOCS Commissioner is enough to sustain this claim." *Collins v. Goord*, 438 F. Supp. 2d 399, 420 (S.D.N.Y. 2006). It is not. Because Plaintiff merely seeks to hold Kelly liable based on his supervisory capacity or place within the chain of command, his allegations thus merit dismissal. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (approving dismissal of §

---

[5] Given Plaintiff's status as a *pro se* litigant, "it is appropriate for the court to consider materials outside of the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting district court cases); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

7

1983 claim where "plaintiff does no more than allege that [defendant] was in charge of the prison.") (internal quotation marks omitted).  The Court therefore GRANTS Defendants' motion to dismiss with respect to Plaintiff's claims against Kelly.

### C.  Plaintiff's Eighth Amendment Claim for Deliberate Indifference to Safety

Defendants also argue that Plaintiff fails to state a claim against Sexton for deliberate indifference to his safety.  Defs.' Mem. 3-7.  To state a claim under § 1983, a plaintiff must allege "that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) (citing *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004)).  As opposed to deliberate indifference claims brought by post-conviction prisoners—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69-72 (2d Cir. 2009).  However, this Circuit has found that "[c]laims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72; *see also Coronado v. Goord*, No. 99 Civ. 1674 (RWS), 2000 WL 1372834, at *7 (S.D.N.Y. Sept. 25, 2000) (stating that the standard for bring a Fourteenth Amendment claim is the same as under the Eighth Amendment).  Accordingly, the Eighth Amendment provides the applicable framework here.  *Caiozzo*, 581 F.3d at 72.

The Eighth Amendment requires that prison officials take "reasonable measure to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Gilmore v. Rivera*, 13 CIV. 6955 RWS, No. 13 Civ. 6955, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Prison officials may neither deprive

a prisoner of 'basic human needs, *e.g.,* food, clothing, shelter, medical care, and reasonable safety,' nor expose an inmate to conditions that 'pose an unreasonable risk of serious damage to his future health.'"  (citations omitted)).

Accordingly, a prison official's failure to protect a prisoner from harm may form the basis of a § 1983 claim.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.*  However, negligence is not sufficient in itself to allege a § 1983 claim.  *Hayes*, 84 F.3d at 620; *Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir. 1988).  A prison official may have a duty to protect an inmate when two requirements are satisfied:  "First, the deprivations [of rights] alleged must be, objectively, 'sufficiently serious' . . . and [second] a deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted); *accord Coronado*, 2000 WL 1372834, at *3.  Therefore, in order for a plaintiff to allege a constitutional deprivation of his Eighth Amendment rights on the basis of a failure to protect, he must show that a prison official acted unreasonably when aware of a "significant risk of serious injury." *Jones v. Goord*, 435 F. Supp. 2d 221, 235-36 (S.D.N.Y. 2006) (quoting *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997)).

The analysis under the Eighth Amendment requires courts to apply a two prong test.  First, under the objective prong, the alleged deprivation must be "sufficiently serious." *Jones*, 435 F. Supp. 2d at 234-35 (citing *Farmer*, 511 U.S. at 834).  A plaintiff must, therefore, allege facts that amount to a denial of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Second, under the subjective prong, a plaintiff must demonstrate that the charged defendants acted with a "sufficiently culpable state of mind." *Jones*, 435 F. Supp. 2d at 235 (citing *Helling*

*v. McKinney*, 509 U.S. 25, 33 (1993)).  The required state of mind is "deliberate indifference." *Wilson*, 501 U.S. at 303.  Accordingly, to state a claim, a plaintiff must allege facts showing that a defendant knew of and disregarded an "excessive risk of inmate health and safety" or that he was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed.  *Farmer*, 511 U.S. at 837; *Caiozzo*, 581 F.3d at 71.  "Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk."  *Walker*, 717 F.3d at 125 (citation omitted).

With respect to the objective element, conditions that place a prisoner at a "substantial risk of serious harm" from other inmates may constitute cruel and unusual punishment.  *Walker*, 717 F.3d at 128 (citing *Jones*, 435 F. Supp. 2d at 238).  Generally, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious,' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"  *Heisler*, 981 F. Supp. at 837 (S.D.N.Y. 1997) (quoting *Wilson*, 501 U.S. at 298), *aff'd*, 164 F.3d 618 (2d Cir. 1998).  The Defendants assert that courts may find a substantial risk of serious harm only where there is "evidence of a previous altercation between a plaintiff and their attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker."  Defs.' Mem. 5.  In *Heisler*, however, the court determined that a substantial risk of serious harm may exist in the absence of any allegation of a history of altercations between the plaintiff and his attacker.  981 F. Supp. at 837.  There, in deciding a motion for summary judgment, the court found that the plaintiff's allegations raised a genuine issue of material fact where the plaintiff alleged that another inmate attacked him while he was being

held as a pretrial detainee, and that officers witnessed the assault, but failed to intercede to stop it. *Id.* So too here, Plaintiff's allegations raise a factual question as to whether a "substantial risk of serious harm" existed based upon the alleged conditions of overcrowding and a "den of violence." *Id.*; *see also Walker*, 717 F.3d at 128-29.

Under the subjective prong, "a prison official acts with deliberate indifference and thus 'has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measure to abate the harm.'" *See Lee v. Artuz*, No. 96 Civ. 8604 (JGK), 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Hayes*, 84 F.3d at 620). Plaintiff alleges that Sexton "failed to exercise adequate care for the Plaintiff's safety and to prevent further reasonably foreseeable physical harm, abuse, and violence." Am. Compl. 4. Allegedly, after Sexton arrived at the assault, he stood outside the cell and ordered the inmates to stop. *Id.* When they continued, he left to get help and did not come back for "about five minutes." *Id.* Sexton returned with two other officers, who stopped the assault. *Id.* From these allegations, even though Sexton returned to the holding cell, Plaintiff sufficiently alleges that he had knowledge of the "substantial risk of serious harm" in that Sexton actually witnessed the assault at the hands of two other detainees. Therefore, the question becomes whether Sexton's response to Plaintiff's assault was reasonable. The fact intensive nature of this question cannot be decided on a motion to dismiss. *See Braxton v. Nichols*, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *5 (S.D.N.Y. Mar. 18, 2010); *see also Rosen v. City of New York*, 667 F. Supp. 2d 355, 360-61 (S.D.N.Y. 2009) (finding that the question of whether a prison supervisor had a reasonable opportunity to intervene was an "issue of fact for the jury") (quoting *Pearson v. Correction Officer Principe*, No. 97 Civ. 3746 (HB), 1999 WL 66521, at *1 (S.D.N.Y. Feb. 9, 1999)).

Defendants argue that the Court should focus on whether Plaintiff has shown "evidence that [the defendant] could have prevented the attack or injury," rather than on the reasonableness of Sexton's response. Defs.' Mem. 7 (quoting *Avincola v. Maldonado*, No. 04-3529-PR, 2005 WL 3116760, at *1 (2d Cir. Nov. 22, 2005) (summary order)). However, the cases cited by Defendants involve evidence adduced by the parties at the summary judgment stage, whereas here, the record is insufficient to allow the Court to make a comparable determination. *See Walker*, 717 F.3d at 129 (reversing district court's dismissal of *pro se* complaint concerning deliberate indifference to inmate safety and finding, *inter alia*, that the cases cited by defendants could be distinguished because they "were decided after development of the factual record").

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's claim against Sexton for deliberate indifference to his safety.

### III. Conclusion

For the reasons set forth above,

(1) Defendants' motion to dismiss is GRANTED as to all claims against Defendant Kelly;

(2) Defendants' motion to dismiss is DENIED as to Plaintiff's claims against Defendant Sexton; specifically, the Court finds that Plaintiff has adequately stated a Section 1983 claim against Sexton based on his alleged failure to protect Plaintiff.

The Clerk of Court is respectfully directed to terminate Kelly as a Defendant in this case, to mail a copy of this Opinion and Order to Plaintiff, and to terminate the motion (Doc. 33). The parties are further directed to appear before the Court for a conference on September 17, 2014 at 9:30 a.m.

It is SO ORDERED.

Dated:   August 26, 2014
         New York, New York

                                                          Edgardo Ramos, U.S.D.J.