UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES BLAKE,

                Plaintiff,

– against –

ISRAEL SEXTON, Sergeant, New York City Police Department,

                Defendants.

**OPINION AND ORDER**

12 Civ. 7245 (ER)

Ramos, D.J.:

Charles Blake ("Plaintiff"), appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that his constitutional rights were violated while he was held as a pretrial detainee in a detention holding facility in Brooklyn, New York. Specifically, Plaintiff alleges that Sergeant Israel Sexton ("Defendant" or "Sgt. Sexton") was deliberately indifferent to his health and safety in violation of the Fourteenth Amendment.

Defendant now moves for summary judgement. (Doc. 62). For the reasons discussed below, Defendant's motion for summary judgment is DENIED.

**I.    Factual Background**

The following facts are undisputed except where otherwise noted.

On the morning of August 26, 2010, Plaintiff was held as a pretrial detainee at the Brooklyn County Court's Central Booking Detention Holding Facility in Brooklyn, New York. Defendant's Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") (Doc. 63) ¶ 1. At some point that morning, Plaintiff sat down in an open seat in the holding cell. *Id.* at ¶ 6. Another detainee soon approached Plaintiff and requested that Plaintiff give him the seat. *Id.* at ¶ 7. At

that point, according to Plaintiff, the other detainee, together with another individual, attacked Plaintiff.  Plaintiff's Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") (Doc. 72) ¶ 9.  Plaintiff and the other detainee had never met prior to this altercation.  Def.'s 56.1 ¶ 19.

During the altercation, Sgt. Sexton approached the holding cell.  Pl.'s 56.1 ¶ 9; Def.'s 56.1 ¶ 10.  As Sgt. Sexton approached the cell, Plaintiff's attackers[1] placed Plaintiff out of Sgt. Sexton's line of sight and prevented Plaintiff from speaking.  Def.'s 56.1 ¶ 11.  Plaintiff claims that, at this point, Sgt. Sexton said "stop it in there," Pl.'s 56.1 ¶ 10, but Sgt. Sexton disputes claims he was aware of any altercation, Def.'s 56.1 ¶12.  Sgt. Sexton then left the holding cell area, at which point the altercation resumed.  Pl.'s 56.1 ¶ 12.  The altercation caused other inmates in the holding cell to begin yelling.  Def.'s 56.1 ¶ 14.  According to Plaintiff, about ten to fifteen minutes later Sgt. Sexton and two other officers returned to the holding cell.  Pl.'s 56.1 ¶ 15.  The altercation stopped as soon as the officers inserted a key into the cell door.  Def.'s 56.1 at ¶ 16.  Plaintiff was removed from the cell, and Sgt. Sexton ordered another officer to call for an ambulance.  *Id.* at ¶ 17.  Within twenty minutes of the altercation, Plaintiff was seen by medical professionals and placed in an ambulance for transportation to a hospital for treatment of his injuries.  *Id.* at ¶ 18.

According to medical records submitted with Plaintiff's Amended Complaint, Plaintiff suffered serious injuries, including closed dislocation of his right ankle, blunt trauma, and a right ankle fracture.  Amended Complaint ("Am. Compl.") (Doc. 18), Ex. A.  Plaintiff underwent two surgical operations on his right ankle, and was referred to physical therapy afterwards.  *Id.*  The

---

[1] Defendant's Rule 56.1 Statement of Undisputed Facts refers to only one attacker.  Plaintiff's account, however, consistently refers to at least two attackers.  For the purposes of this motion, the Court will draw an inference in Plaintiff's favor that there were two attackers.

records provided also indicate that Plaintiff may need additional surgeries in the future. *Id*. Defendant does not dispute these injuries or the need for medical treatment.

The parties dispute whether or not Sgt. Sexton became aware of the altercation when he initially approached the holding cell. Sgt. Sexton claims he was initially unaware of the altercation, Defendant's Memorandum of Law ("Def.'s Br.") (Doc. 66) at 2, while Plaintiff claims the Defendant knew "something was going on" when he initially approached the cell, Pl.'s 56.1 ¶ 10.

## II.  Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id*.

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, like here, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation mark omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*,

4

710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### III. Discussion

#### A. Plaintiff's Deliberate Indifference Claim

The Eighth Amendment[2] requires that prison officials take "reasonable measure to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Gilmore v. Rivera*, No. 13 Civ. 6955 (RWS), 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Prison officials may neither deprive a prisoner of 'basic human needs, *e.g.*, food, clothing, shelter, medical care, and reasonable safety,' nor expose an inmate to conditions that 'pose an unreasonable risk of serious damage to his future health.'") (citations omitted). Thus, a prison official's failure to protect a prisoner from harm may form the basis of a Section 1983 claim. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.*

---

[2] As opposed to deliberate indifference claims brought by post-conviction prisoners—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69–72 (2d Cir. 2009). However, the Second Circuit has stated that "[c]laims for deliberate indifference…should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72; *see also Coronado v. Goord*, No. 99 Civ. 1674 (RWS), 2000 WL 1372834, at *7 (S.D.N.Y. Sept. 25, 2000) (stating that the standard for bringing a Fourteenth Amendment claim is the same as under the Eighth Amendment). Accordingly, the Eighth Amendment provides the applicable framework here. *Caiozzo*, 581 F.3d at 72.

To prove an Eighth Amendment violation based on an attack by another inmate, "the plaintiff's burden consists of both objective and subjective elements—the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard and that the charged prison officials acted with a sufficiently culpable state of mind." *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Farmer*, 511 U.S. at 834).

First, under the objective prong, the alleged deprivation is "sufficiently serious" when a "prison official's act or omission … result[s] in the denial of the 'minimal civilized measure of life's necessities.'" *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Farmer*, 511 U.S. at 834). A plaintiff need not show a serious physical injury, only the existence of a "substantial risk of serious harm." *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (quoting *Wilson*, 501 U.S. at 298), *aff'd*, 164 F.3d 618 (2d Cir. 1998). A substantial risk of serious harm "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Colliton v. Gonzalez*, No. 07 Civ. 02125 (RJH) (MHD), 2011 WL 1118621, at *5 (S.D.N.Y. Mar. 23, 2011); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

Second, under the subjective prong, a plaintiff must demonstrate that the charged defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303. Accordingly, a plaintiff must show that the defendant knew of and disregarded an excessive risk of inmate health and safety or that defendant was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed. *See Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125 ("Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.") (citation omitted). An officer displays deliberate indifference when he or she has

6

adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate with no risk to his or her self, yet fails to act.  *Rosen v. The City of N.Y.*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (citing *Stubbs v. Dudley*, 849 F.2d 83, 86–87 (2d Cir. 1988)).  A correctional officer's failure to intervene during an inmate attack can constitute deliberate indifference.  *See Morales v. N.Y. State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988); *see also Stewart v. Schiro*, No. 13 Civ. 3613 (NGG) (VMS), 2015 WL 1854198, at *8–9 (E.D.N.Y. Apr. 22, 2015) (noting that an inmate-to-inmate altercation can "put a prison official on sufficient notice to render the prison official deliberately indifferent if he or she then fails to intervene in an appropriate manner"); *Candelaria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *9 (S.D.N.Y. Mar. 1, 1996) (same).

To show deliberate indifference in a failure-to-intervene action, the plaintiff must first show defendant "observed or had reason to know" the plaintiff was involved in a physical altercation with another inmate.  *Rosen*, 667 F. Supp. 2d at 360 (citing *Williams v. Russo*, No. 01 Civ. 6401 (CJS), 2009 WL 185758, at *4 (W.D.N.Y. Jan. 26, 2009).  And second, plaintiff must show that the defendant had "an extended opportunity to stop the attack but failed to take any action to do so."  *Rucco v. Howard*, No. 91 Civ. 6762 (RPP), 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993) (citing *Williams*, 508 F.2d at 546); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.") (citation omitted); *Russo*, 2009 WL 185758, at *4 (laying out the test for deliberate indifference in a failure to intervene claim.).

Here, regarding the objective prong, Plaintiff has submitted sufficient evidence to go to the trier of fact on whether he faced "a condition of urgency."  *Colliton*, 2011 WL 1118621, at

7

\*5. According to Plaintiff, his alleged attackers punched and kicked him numerous times, and at least one punch to the back of the head was strong enough to knock Plaintiff to the ground. Declaration of Daniel G. Saavedra (Doc. 83), Ex. B ("Pl. Dep. Tr.") at 37:10–16, 38:1–25, 39:1–25. Moreover, documented injuries suffered by Plaintiff support the inference that conditions were urgent—*i.e.*, sufficiently serious—during the attack.[3] *See Knowles*, 904 F. Supp. at 221 (S.D.N.Y. 1995) (holding that the severity of plaintiff's injury, a cut to the face requiring sixteen stiches, clearly "constitute[d] a denial of the minimal civilized measure of life's necessities"); *see also Warren v. Goord*, 579 F. Supp. 2d 488, 496 (S.D.N.Y. 2008) (holding the objective prong satisfied based on a cut to plaintiff's face and noting that courts in this District have found the objective prong met based on plaintiffs' physical injuries), *aff'd*, 368 F. App'x 161 (2d Cir. 2010).

With respect to the subjective prong, Plaintiff first has provided sufficient evidence for a reasonable trier of fact to conclude that Defendant "observed or had reason to know" that Plaintiff was involved in a physical altercation with another inmate when Defendant initially approached the cell.[4] *Rosen*, 667 F. Supp. 2d at 360 (citing *Russo*, 2009 WL 185758, at \*4). While Defendant relies heavily on Plaintiff's deposition testimony that Sgt. Sexton was not initially able to see the altercation when he first approached the cell, *see* Pl. Dep. Tr. at 41: 9–13 ("They just stopped because [Sgt. Sexton] couldn't look in. He couldn't see nothing."), there are

---

[3] Plaintiff's opposition brief also argues that the conditions in the holding cell created an objectively substantial risk of harm due to overcrowding and/or inadequate supervision by corrections officers. *See* Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n") (Doc. 73) 4. Plaintiff has not, however, submitted sufficient evidence to create a genuine issue of fact for trial on these particular conditions.

[4] The court notes that the bulk of Plaintiff's opposition argues Defendant was negligent. *See, e.g.*, Pl.'s Opp'n at 5. Negligence is not sufficient to create liability in this context. *Farmer*, 511 U.S. at 834. The Court therefore only considers Plaintiff's deliberate-indifference claim, which "raise[s] the strongest arguments that [Plaintiff's papers] suggest." *McPherson*, 174 F.3d at 280.

other portions that, when construed in the light most favorable to Plaintiff, suggest Defendant did observe the altercation, *see* Pl. Dep. Tr. at 34:16–19 ("And Sergeant Sexton came to the gate with a street shirt on. He said, stop it in there and walked away. And they continued beating me."), 39:7–9 ("The dude is holding me on the side, like, choking me. And Sergeant Sexton just walked by and said, stop it in there."), 44:18–22 ("When Sergeant Sexton walked by, [the inmate] started punching me…. [T]hat's when they started stomping me, kicking me, doing all that to me."). Putting aside the question of how Plaintiff could testify as to what *Defendant* saw, the portions of Plaintiff's deposition testimony that align with his allegation that Sgt. Sexton was aware of the attack when he first approached the cell must be credited because even where a party's deposition testimony may be internally inconsistent the Court "must 'draw all factual inferences in favor of the party against whom summary judgment is sought'." *DeAndrade v. K.J. Mountain Corp.*, No. 11 Civ. 00011 (ER), 2013 WL 6500233, at *7 (S.D.N.Y. Dec. 11, 2013) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995)); *see also Kass v. A.L.U.F. Plastics, Inc.*, No. 96 Civ. 1297 (MGC), 1999 WL 961780, at *1 n.1 (S.D.N.Y. Oct. 20, 1999) ("Although the inconsistency of the deposition testimony raises some questions, for purposes of [summary judgment], the portions to which [plaintiff] points must be assumed to be credible."). Accordingly, Plaintiff's deposition transcript raises a genuine issue of fact regarding whether or not Defendant knew or had reason to know of the altercation when he first approached the holding cell.

Second, concerning whether or not Defendant had a reasonable opportunity to intervene, Defendant claims he responded "immediately" after he became aware of the altercation by returning to the cell with two other officers. Def.'s Br. at 3 (citing Pl. Dep. Tr. at 65:1–10). But that response *assumes* that Defendant did not have knowledge of the altercation until he heard

9

the yelling. Since the parties agree that there was a ten to fifteen minute lapse between Defendant's first visit and his return to the cell, Pl.'s 56.1 ¶ 14 (citing Pl. Dep. Tr. at 34:18–22), the reasonableness of Defendant's response turns squarely on when Defendant actually learned of the altercation, a fact that is plainly in dispute. A reasonable jury could find that Defendant had a reasonable opportunity to attempt to prevent the attack from continuing but failed to seize it. *See Rosen*, 667 F. Supp. 2d at 360–61 (finding that the question of whether a prison supervisor had a reasonable opportunity to intervene was an issue of fact for the jury); *see also Brooks v. Brennan*, No. 912 Civ. 624 (NAM) (CFH), 2014 WL 6975370, at *11 (N.D.N.Y. Dec. 9, 2014) (denying defendants motion for summary judgment based on plaintiff's allegations that the defendants failed to intervene as they observed plaintiff's assault for a period of fifteen minutes.).

Defendant argues that he is entitled to summary judgment because Plaintiff offers no evidence that Defendant had prior knowledge of a previous altercation between Plaintiff and his alleged attackers. *See* Def.'s Br. at 6 ("[A] substantial risk of harm *can only* be demonstrated where there is evidence of a previous altercation between a plaintiff and their attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker.") (emphasis added) (citing *Hopkins v. Allard*, No. 08 Civ. 0001 (DNH) (DEP), 2010 U.S. Dist. LEXIS 114368, at *74 (N.D.N.Y. Aug. 23, 2010)). The cases relied on by Defendant, however, all stand for the proposition that there is no constitutional violation when prison officers fail to prevent purely surprise attacks.[5] But here, unlike in the cases cited by

---

[5] *See Hopkins*, 2010 U.S. Dist. LEXIS 114368, at *74 (holding that without evidence of a previous altercation, no reasonable jury could find that defendants "*knew of* and disregarded a substantial risk of serious harm," in an action claiming failure to prevent a surprise attack)(emphasis added); *accord Desulma v. The City of N.Y.*, No. 98 Civ. 2078 (RMB) (RLE), 2001 U.S. Dist. LEXIS 9678, at *21 (S.D.N.Y. Jul. 6, 2001); *Berry v. N.Y.C. Dep't of Corr., et al.*, No. l2 Civ. 7819 (RWS), 2014 U.S. Dist. LEXIS 71214, at *9–10 (S.D.N.Y. May 22, 2014); *Fernandez v.*

Defendant, Plaintiff's theory is that Defendant had *actual* knowledge of an ongoing attack when he first approached the cell, and that he then demonstrated deliberate indifference when he knowingly ignored the risk if substantial harm to Plaintiff for the next fifteen minutes while the attack continued.  *See Stewart*, 2015 WL 1854198, at *8–9 ("[U]nder certain circumstances, the commencement of an inmate-to-inmate altercation could put a prison official on sufficient notice to render the prison official deliberately indifferent if he or she then fails to intervene in an appropriate manner."); *see also Candelaria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *9 (S.D.N.Y. Mar. 1, 1996) (inaction by a correction officer to intercede and halt an attack by a fellow prisoner is sufficient basis for deliberate indifference); *Heisler*, 981 F. Supp. at 837 (denying defendant's motion for summary judgment where the plaintiff alleged that another inmate, whom plaintiff had no alleged previous altercations with, attacked him while he was being held as a pretrial detainee, and that officers witnessed the assault but failed to intercede to stop it).  Defendant, in other words, conflates the cases where defendants are alleged to have failed to prevent a surprise attack, and cases like the one before the Court where defendants are alleged to have failed to intervene to stop an attack they have actually witnessed.  *See Desulma v. The City of N.Y.*, No. 98 Civ. 2078 (RMB) (RLE), 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (noting that "a correctional officer's presence at an attack of an inmate, where he does nothing to stop an assault, may be sufficient to establish a [deliberate indifference] claim").  Accordingly, the cases Defendant relies on do not compel a different result here.

---

*N.Y.C. Dep't of Corr.*, No. 08 Civ. 4294 (KMW), 2010 U.S. Dist. LEXIS 29686, at *4 (S.D.N.Y. Mar. 29, 2010); *Zimmerman v. Macomber*, No. 95 Civ. 882 (DAB), 2001 U.S. Dist. LEXIS 12499, at *5 (S.D.N.Y. Aug. 21, 2001); *Grant v. Burroushs*, g6 Civ,2753 (MGC), 2000 U.S. Dist. LEXIS 12917, at *9 (S.D.N.Y Sept. 8 200).

Denial of summary judgment is proper on this record, even though the record consists only of Plaintiff's deposition testimony and medical records, and even though Defendant can cite to portions of that record that support his position. *See Knowles*, 904 F. Supp. at 222 ("[I]n light of the Court's heightened duty of scrutiny with regard to motions for summary judgment when a *pro se* litigant is involved, the Court finds that based on the current record there are indeed issues of fact suitable for trial.").

Accordingly, the Court finds that genuine issues of material fact remain as to Plaintiff's deliberate-indifference claim.

### B. Qualified Immunity

Defendant argues that, even if Plaintiff's rights were violated, he is nevertheless entitled to qualified immunity. *See* Def.'s Br. at 8–10. Defendants bear the burden of proof on this affirmative defense. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Second Circuit has described the doctrine:

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken."

*Munafo v. Metropolitan Transportation Authority*, 285 F.3d 201, 210 (2d Cir. 2002) (alterations in original) (citations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The Supreme Court recently explained that, "[t]o be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (second alteration in original) (quoting *Anderson*, 483 U.S. at 640). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012) (internal quotation mark omitted) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Moreover, "[e]ven if the right at issue was clearly established in certain respects . . ., an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When considering qualified immunity in the context of a Rule 56 motion, the Second Circuit has long held as follows:

> Summary judgment dismissing a claim on the basis of the defendants' qualified-immunity defense may thus be granted if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.

*In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996).

"Correction officers have a clearly established duty to protect prisoners from violence at the hands of other prisoners." *Dennis v. Westchester Cty. Jail Corr. Dep't*, 485 Fed. App'x 478, 481 (2d Cir. 2012) (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted). Plaintiff claims Defendant violated his clearly established constitutional right by acting with deliberate indifference to his safety in failing to protect him from harm from other inmates. The

13

qualified immunity determination thus turns on the objective reasonableness of Defendant's conduct.

Defendant argues his actions were objectively reasonable because Plaintiff was involved in a surprise attack. Def.'s Br. at 9. However, as already discussed, the fact that the attack may have been a "surprise" may absolve the Defendant from failing to prevent it, but it does not permit him to do nothing when he is a witness to the attack and in a position to stop it. Whether he was a witness and in a position to stop it are disputed material facts. Because of that dispute, the Court is unable to conclude that Defendant's actions were objectively reasonable as a matter of law. *See Villante v. Vandyke*, No. 904 Civ. 759 (FJS) (DRH), 2008 WL 163596, at *6 (N.D.N.Y. Jan. 15, 2008) ("Since [p]laintiff has raised an issue of fact about whether [d]efendants stood by and allowed other inmates to attack him ... [d]efendants are not entitled to qualified immunity."). Summary judgment on grounds of qualified immunity is thus inappropriate in this case.

### IV.   Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is DENIED. The Court will hold a status conference on May 6, 2016 at 10:00 a.m. The clerk of the court is respectfully directed to terminate the motion. (Doc. 62).

It is SO ORDERED.

Dated:   March 24, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.

14